UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| DAVID BRATTON | CIVIL ACTION NO. 06-1747 |
| VS. | JUDGE HAIK |
| SCHLUMBERGER TECHNOLOGY CORP. PENSION PLAN | MAGISTRATE JUDGE METHVIN |

### RULING ON MOTION FOR PROTECTIVE ORDER AND TO QUASH PLAINTIFF'S DISCOVERY REQUESTS
*(Rec. Doc. 24)*

Before the undersigned magistrate judge is the motion for protective order and to quash plaintiff's discovery requests filed by defendant Schlumberger Technology Corporation Pension Plan (the "Plan") on August 24, 2007.[1] The motion is opposed by plaintiff, David Bratton ("Bratton"). For the following reason, the motion is GRANTED.

*Background*

On October 6, 2006 plaintiff filed his complaint pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq* ("ERISA"). Plaintiff alleges that for many years, through the present, the Plan has consistently provided benefits information to plaintiff and other participants via a Schlumberger intranet website called "SABL" ("Schlumberger Automated Benefits Link"). Plaintiff claims that the Plan has encouraged participants to utilize and rely upon the benefits information provided by SABL by the following terms:

> You can find information on the Pension Plan (including your accrued pension benefit) 24 hours a day, seven days a week on SABL (Schlumberger Automated Benefits Link) on the Schlumberger intranet at https://www.peopleslb.com.

---

[1] Rec. Doc. 24.

2

Plaintiff settled a previous lawsuit against Schlumberger, the sponsor of the Plan, filed in this court in 2000.[2]  In the instant complaint, plaintiff claims that in negotiating a settlement of the previous suit, he "relied upon the statements of his accrued pension benefits provided for him by the Plan, through SABL . . . ."[3]

Plaintiff further alleges that he is considering retirement from Schlumberger, and that, in the course of making preliminary inquiries, has been informed that his pension benefits will not be as represented at SABL, but some lower amount to be calculated by an actuary at the time of his retirement.

Plaintiff admits that SABL contains a purported disclaimer, but contends it is written in vague and misleading terms which does not preclude his reasonable reliance upon the pension benefits estimated there.  Plaintiff claims that the Plan should be estopped from calculating pension benefits due to him under a method contrary to the Plan's representations as stated on its SABL system.

The administrative record reflects that by letter dated March 28, 2005, plaintiff presented to Schlumberger his claim and request for interpretation and/or plan information, attaching a copy of his March 2, 2005 pension statement from SABL which showed an annual accrued benefit of $31,201.32.  Plaintiff stated that despite the SABL computation, he had been informed by Plan administrators that his annual accrued benefit would not be $31,201.32, but some lesser amount to be determined by an actuary.

---

[2] <u>David Bratton v. Schlumberger Technology Corp</u>, CA No. 00-2354.

[3] Complaint, Rec. Doc. 1, page 2, ¶ 5.

3

The Plan administrator denied the claim on September 28, 2005, noting that plaintiff had previously received 25 months of pension benefits at the rate of $1,603.93 per month from February 4, 1999, when he was terminated, through November 1, 2001, when he was reinstated.[4] Accordingly, plaintiff's future retirement benefits would be offset by the actuarial equivalent of the 25 payments received prior to his reinstatement. Plaintiff's monthly pension benefit payment, including the offset, was determined to be $2,475.04 per month, or $29,700.48 per year.

On November 21, 2005, plaintiff appealed the denial of his claim and again requested interpretation and/or plan information regarding the Plan. The appeal was denied on March 21, 2006. With reference to the issue of reliance on SABL, the Plan administrator stated, "We do not believe there is a substantial likelihood that a reasonable employee who has already received a portion of his accrued pension would expect to still be entitled to previously received amounts merely because an electronic benefit estimate does not reflect the previously paid amounts." The response stated:

> **Governing Plan Provisions and Reasons for Denial.** As more fully described in the claim denial letter dated September 28, 2005, the basis of the calculation for the annual accrued pension benefit for Mr. Bratton as of September 1, 2005 is found in Section 4, Section 3.2, Article 5 and Section 6.3 of the Plan. Please find enclosed a copy of the Plan, all executed amendments and summary plan description for your reference.
>
> Based on our files, Mr. Bratton was terminated as of February 4, 1999 and commenced receiving pension benefits in the form of a Life Only annuity as of

---

[4]The response indicated: "Section 4 of the Plan provides for the accrual of Annual Retirement Credits for each year of participation based on a formula taking into account years of Active Service and Admissible Compensation. Section 3.2 in conjunction with Article 5 of the Plan provide for distribution eligibility, form and timing. Under Section 6.3 of the Plan, any distribution pursuant to the provisions of the Plan fully release and discharge the Trustee, the Administrator, and the Employer from any and all claims of the Participant to the extent of the distribution."

4

November 1, 1999 pursuant to the terms of the Plain. He received payments through November 1, 2001 when he was subsequently reinstated. During this period, Mr. Bratton received 25 monthly payments of $1603.93 each. Upon Mr. Bratton's subsequent retirement, he will once again commence to receive his benefit under the Plan, which will be offset by the actuarial equivalent of the 25 payments he received prior to his reinstatement. Mr. Bratton's previous receipt of the 25 monthly payments constitutes a release and discharge of any liability with respect to such payments pursuant to the Plan and thus, he cannot now claim to be entitled to amounts he previously received.

We do not believe that the SABL benefit estimates that explicitly provide that it "is only an estimate and is not a guarantee of a benefit" estops our interpretation of the controlling Plan terms. The SABL estimate is not a material misrepresentation. We do not believe there is a substantial likelihood that a reasonable employee who has already received a portion of his accrued pension would expect to still be entitled to previously received amounts merely because an electronic benefit estimate does not reflect the previously paid amounts. Additionally, we believe that the Plan terms are clear about the release and discharge of liability with respect to payments made pursuant to the Plan. The Employee Retirement Income Security Act of 1974, as amended, does not permit informal modifications of unambiguous plan terms. Thus, we do not believe that Mr. Bratton reasonably relied on the SABL benefit estimates rather than the unambiguous Plan terms.

The SABL benefit estimate is based on Mr. Bratton's Annual Retirement Credits based on the Plan formula taking into account years of Active Service and Admissible Compensation pursuant to Section 4, Section 3.2, and Article 5 of the Plan but does not take into account the reduction for the amount of previously received pension payments pursuant to Section 6.3 of the Plan. The reduction pursuant to Section 6.3 of the Plan is the reason for the difference between the benefit estimate provided by SABL and Mr. Bratton's benefit due under the Plan.

Once he had exhausted his administrative remedies, plaintiff filed the instant ERISA suit.

### *Issues*

Plaintiff seeks discovery of information and documents regarding the sources and uses of the data relied upon in publishing the information contained within the SABL website, and the

5

circumstances surrounding plaintiff's purported reliance upon that information.[5] Defendant moves for a protective order and to quash plaintiff's discovery requests on grounds that discovery in this case, if allowed, should be limited to subject matter which relates to the administrator's interpretation of the terms of the Plan as set forth in the ERISA case order.

*Findings and Conclusions*

The ERISA case order contains the following limitations on discovery:

(6) **Discovery Limitations**: Absent further order, discovery in this case is limited to subject matter which relates to the administrator's interpretation of the terms of the policy or plan.

Discovery may not be conducted regarding the factual basis of the plaintiff's medical claim because this court's review is constrained to the evidence in the administrative record as reviewed by the plan administrator, and the administrator's decision can only be overturned if the court concludes that it constitutes an abuse of discretion.

[Rec. Doc. 6] (footnote 8 and citations omitted).

The ERISA Case Order states "to date, evidence which has been recognized to relate to the administrator's interpretation of plan terms includes evidence of the bad faith of plan trustees, evidence of a plan administrator's potential conflict of interest and evidence concerning how as

---

[5] See Plaintiff's Response to ERISA Case Order, Rec. Doc. 16. See also plaintiff's Interrogatories and Requests for Production of Documents, Rec. Doc. 24, Exhibit A. Generally, for the time period from January 1, 2000 to the present, plaintiff seeks source information for the information contained on the SABL website and the Plan's statement of plaintiff's pension benefits contained in the administrative record and the basis for any discrepancy; the identification of individuals who prepared these source documents and or who calculated or retrieved any information utilized to publish benefit information on the SABL website or to respond to plaintiff's claim made in the administrative record. Plaintiff also seeks information regarding the Plan's actions to investigate and respond to his estoppel claim and its contentions as to the elements of plaintiff's ERISA-estoppel claim, i.e. whether the Plan is unambiguous as to how benefits are to be calculated and whether plaintiff's reliance on the SABL website was unreasonable. Plaintiff requests information about any disclaimer or draft disclaimer posted on the SABL website and information about the SABL website itself, including the identification of individuals who maintained or modified the website, and the portions of the website modified and reasons therefore. Plaintiff also seeks information about the Plan's efforts and the documents it has obtained regarding his settlement in the matter David Bratton v. Schlumberger Technology Corp., No. 00-CV-2354 and identification of any document that the Plan will seek to introduce into evidence at trial or any hearing outside of the administrative record, if so allowed by the Court.

6

administrator has interpreted terms of the plan in other instances." [Id. at fn 9] (citations omitted). The ERISA Case Order further provides that "expert evidence which assists the court in understanding the medical terminology or practice related to a claim is admissible" and would thus be a proper subject of discovery." [Id.] (citation omitted).

The Plan contends that none of these exceptions are at issue and that the administrative record is complete and details plaintiff's claim and its response.[6]

Plaintiff maintains that the Plan's "wooden reliance" on the cases cited in the ERISA Case Order is misplaced because his claim is not a "garden variety" benefits claim but one of ERISA-estoppel, a legal theory only recently recognized by the United States Court of Appeals for the Fifth Circuit in Mello v. Sara Lee Corp., 431 F.3d 440 (5th Cir. 2005). Based on Mello's recognition that application of an ERISA-estoppel claim is a legal theory that receives de novo review rather than an interpretation of a plan's terms, plaintiff argues that the standard reason for limiting discovery which stems from the principle that a court's review of a plan administrator's decision is deferential and limited to the administrative record does not apply.[7] Plaintiff concludes that it is clear that de novo review permits evidence extrinsic to the administrative record but that defendant fails to explain where this extrinsic evidence will come from if he is not allowed discovery.[8]

---

[6] Rec. Doc. 24, p. 3.

[7] Id. at p. 3.

[8] Id. at p. 4.

7

To establish an ERISA-estoppel claim, a plaintiff must show: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. Id. at 444-45.

Plaintiff contends that denial of his discovery request would result in his inability to prove his claim. This assertion is conclusory and unpersuasive, particularly in light of the fact that plaintiff has not adequately identified how he "relied to his detriment" vis-a-vis the SABL representations when he has not yet retired. Furthermore, plaintiff does not dispute that he has already received 25 months of retirement benefits due to a previous termination and reinstatement, and that he fails to offer a compelling argument why the receipt of those benefits should not affect his future retirement.

Fifth Circuit jurisprudence allows an expansion of the administrative record only in limited circumstances, none of which are present in this case. Neither Mello nor High v. E-Systems Inc., 459 F.3d 573 (5th Cir. 2006) explicitly address whether the district court can or should consider evidence extrinsic to the administrative record when considering a claim of estoppel, particularly where, as in this case, the administrator addressed and denied the plaintiff's estoppel claim.

In Mello, the Fifth Circuit determined that, because the application of ERISA-estoppel is a legal theory rather than an interpretation of the Plan's terms, it should be reviewed de novo. Mello, 431 F.3d at 444 (citations omitted). The Fifth Circuit continued, "[f]urthermore the Committee made no finding as to whether the equities of the situation required Sara Lee to honor any representations it may have made to Mello. Because Mello's estoppel claim is not a review of a decision of the Committee, the district court properly exercised *de novo* review." Id. In the

8

instant case, the sole claim presented to the administrator was plaintiff's ERISA-estoppel which the Plan administrator considered and denied. Thus, the court's review of the plaintiff's estoppel claim is necessarily a review of a decision of the Plan administrator.

In Kirwan v. Mariott Corp., 10 F.3d 784, 789 (11th Cir. 1994), the Eleventh Circuit held that a "district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination." 10 F.3d at 789. However, the Kirwan court also recognized that there is a split among the circuits as to whether a de novo review should include facts not before the plan administrator. Id. at fn 31. Subsequently, the Tenth Circuit addressed the issue at length, observing that the courts of appeals are split on the issue with the Sixth Circuit prohibiting the introduction of evidence outside the administrative record in de novo cases and the Eleventh Circuit holding that in a de novo case, any party may be free to submit additional evidence outside the administrative record. Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002).[9]

In S. Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 101-02 (5th Cir. 1993), the Fifth Circuit held that it could consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination of the cause of the insured's death, but that the court could consider other evidence unavailable to the plan administrator as it related to his interpretation of the policy. Moore, 993 F.2d at 102.[10]

---

[9] The Tenth Circuit concluded, in agreement with the Fourth Circuit, concluded that the best way to implement ERISA's purposes would be to restrict de novo review to the administrative record but to allow the district court to supplement that record when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review. Hall, 300 F.3d. at 1202.

[10] The court stopped short however of establishing a rule that such evidence could be considered on a de novo review of an administrator's plan interpretation, explaining that in an earlier decision, Wildbur v. ARCO Chemical Co., 974 F.2d 631 (5th Cir. 1992), it had expressly refused to decide whether a court should limit its review to evidence presented to the administrator in reviewing de novo an administrator's interpretation of plan terms. For purposes of

9

The Fifth Circuit subsequently addressed what constitutes the administrative record in the context of a de novo case in Estate of Bratton v. National Union Fire Ins. Co., 215 F.3d 516, 522 (5th Cir. 2000). Plaintiff relies on Bratton's language, quoting Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101, 112-13, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that the court should conduct a de novo review of a plan administrator's denial of benefits "as it would . . . any other contract claim-by looking to the terms of the plan and other manifestations of the parties' intent."[11] The undersigned is not persuaded that this language is a directive for a district court to consider evidence outside of the administrative record when conducting a de novo review of an ERISA-estoppel claim.

In Bratton, a case in which the district court allowed the plaintiff to introduce evidence extraneous to the administrative record during the bench trial of the matter, the Fifth Circuit ultimately concluded that the plaintiff's claims were untimely, reversing the district court's judgment in favor of the plaintiff. The Fifth Circuit observed that the district court in rendering judgment for the plaintiff rested its decision on an equitable estoppel theory <u>crucially based on findings of facts inferred from the trial evidence extrinsic to the administrative record</u>. Bratton, 215 F.3d at 520 (emphasis added). The Fifth Circuit set forth the standards of review for benefit determinations and addressed what information constitutes the administrative record:

> The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete. See Vega v. National Life Ins. Services, 188 F.3d 287, 295, 299 (5th Cir.1999) (en banc) (citing Barhan v. Ry-Ron Inc., 121 F.3d 198, 201-02 (5th Cir.1997)). Once the administrative record has been determined, the district court may not stray from it but for certain

---

the appeal before it, the court assumed without deciding that an administrator can consider such evidence.

[11]Rec. Doc. 27, p. 3.

10

> limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. See id. at 299. FN5 Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. . . .

Id. at 521.

The Fifth Circuit noted further that, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. Id. (citation omitted). If a claimant submits such information, and requests the administrator to reconsider its decision, the additional information should be treated as part of the administrative record. Id. (citations omitted). The Fifth Circuit concluded that it could give no deference to the district court's factual findings or application of equitable estoppel partly because the district court had "strayed far outside the administrative record by conducting its own trial de novo on the merits of the claim." Id. at 522. Reviewing the plan administrator's decision [that the claim was barred by the 'Statutes of Limitation'] in accordance with Vega and the authorities upon which it relied, the Fifth Circuit concluded that there was warrant in the administrative record and a valid basis in the insurance contract to justify the plan administrator's denial of the claim.

Thus, while the Bratton decision does not address the precise issue at bar, the Fifth Circuit, in its de novo review of a claim's administrator's decision, the Fifth Circuit adverted to its earlier decisions allowing a district court to "stray" from the administrative record only in certain limited circumstances and also specifically noted that it was unable in part to give any deference to the district court's factual findings or application of equitable estoppel *when it had*

11

*strayed far outside of the administrative record.* Bratton, 215 F. 3d at 521, 522 (emphasis added).

While, as plaintiff argues, an ERISA- estoppel claim "is not rooted in the terms of the Plan, but in law," the line of Fifth Circuit decisions limiting the court's review to the administrative record, necessarily inform the undersigned's decision. This limitation holds true particularly in the matter at bar where, unlike in Mello where the administrator had made no findings as to the equities of the situation, the sole claim presented to the Plan administrator was plaintiff's estoppel claim which the administrator reviewed and denied.

In light the foregoing,

**IT IS HEREBY ORDERED** that defendant Schlumberger Technology Corporation Pension Plan's motion for protective order and to quash plaintiff's discovery requests is **GRANTED**.

Signed at Lafayette, Louisiana, on October 12, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)